3-19-0532 Morris Engineering, Inc. Appellant v. New Lenox Development, LLC, et al. Appelese. Thank you. Good morning. Good afternoon, Your Honors. Or good afternoon, sorry. Good afternoon, Your Honors. I think I'm in better shape than I indicated by having the wrong part of the day. Okay. Mr. Bozetsy? Yes, Your Honor. Would you like to start? Yes, Your Honor. Good afternoon, Your Honors. May it please the Court. My name is Kevin Bozetsy, Counsel for the Appellant, Morris Engineering, Incorporated. This matter comes before the Court from the order entered by the Circuit Court on January 23, 2019, at which time the Court dismissed Count 2 of Plaintiff's Second Amendment Complaint with prejudice pursuant to Section 2-615 of the Code of Civil Procedure. The Court also dismissed Counts 3, 4, and 5 with prejudice pursuant to Section 2-619A5, the statute of limitations. It also comes before the Court from the order entered by the Circuit Court on July 2, 2019, with regard to Morris Engineering's motion for reconsideration. Although the trial court denied the bulk of Morris Engineering's motion for reconsideration, it did reconsider and vacate a portion of its dismissal of Count 5 with regard to the unjust enrichment claim brought by New Lenox Development. Following the entry of a Rule 304A finding, Morris Engineering filed its timely notice of appeal on September 9, 2019. The issues before this Court are whether the Circuit Court erred in dismissing Count 2 of the Plaintiff's Second Amendment Complaint with prejudice pursuant to Section 2-615 and dismissing Counts 2, 3, and a portion of Count 5 with prejudice pursuant to Section 2-619A9 of the Code of Civil Procedure. With regard to the issues before the Court, the standard of review by this Court is de novo. The history and facts behind this case are rather long. As set forth in the Second Amendment Complaint and the briefs before the Court, the relationship between Plaintiff and the various defendants goes back long, long ago, back to the early part of 2002. At that time, Philip and his brother, James Reagan, contacted Morris Engineering requesting that they provide engineering and surveying services for real estate development and projects that they owned and controlled or otherwise were involved with. Specifically, at the request of Philip and James, beginning in 2002, Morris began providing these services at a residential home site, Glenview Walk Estate Subdivision, which was owned and controlled by the Hiller Development Corporation. James Reagan was the President. Philip and James Reagan again contacted Morris Engineering and requested that they continue to provide services for another one of their real estate development projects. This one, in 2004, was the Piatone-Meyer-Glenn Subdivision. It was owned by the Piatone Development Corporation, of which Philip Reagan was the President. During this entire period of its services to and on these various projects that were owned and controlled by James and Philip Reagan and were paid some, but not all, of the monies that they were owed. In 2015, they were contacted again by Philip and James Reagan and requested to perform again surveying and engineering work at yet another project. This was the Prairie Ridge Estate Subdivision, owned through an entity called New Lenox Development LLC, of which James and Philip Reagan were the only managers of that LLC. Once again, as with the other two projects, Philip and James Reagan represented to Morris Engineering that they owned and controlled the project and that they would continue to be paid for their work on these projects. As we've alleged in the second amended complaint, as of 2007, Morris Engineering had an outstanding balance due of in excess of $140,000 for its work. Despite numerous requests for payment, numerous promises, numerous assurances, the balance remained largely unpaid. Finally, in or about March of 2013, there were discussions and negotiations that took place specifically between Philip and James Reagan and Morris Engineering in order to reach a compromise on all of the outstanding amounts owed by Morris Engineering and to establish a payment schedule for that payment. As a result, a written contract was prepared by Philip and or James Reagan to settle all bills, all debts between Morris Engineering, New Lenox Development, the Reagan Corporation, Hiller Development Corporation, Piatone Development, James and Philip Reagan. In consideration for reducing all of the amounts that were owed and due to New Lenox by the various entities, Morris Engineering agreed to accept payment of $25,000 on or about September 1st of 2013 and another $25,000 on or about September 1st, 2015 from New Lenox Development. However, because of this long tortured history of some payments and some non-payments, Morris Engineering requested that everyone that they had any dealings with, anyone that they had any knowledge of related to the Reagans, including the individuals Philip and James Reagan, as well as another entity that was known that the Reagans owned and controlled, Reagan Corporation, was made a party to this agreement, an agreement that the Reagans drafted. There was no objection. There was no renegotiation. All of those parties were listed and named in this written document. The contract is dated March 13th of 2014, of 2013 rather, and was signed on March 14th, 2013, specifically by Philip Reagan for New Lenox Development. The agreement itself is very, very simple. It's literally two sentences in length. It states, quote, this agreement is to settle any and all bills between Morris Engineering and New Lenox Development LLC, Reagan Corp., Hiller Development, Piatone Development, and including any and all bill for Philip Reagan and James Reagan. Morris Engineering will receive $25,000 on or about September 1, 2013, and another $25,000 on or about September 1, 2015, from New Lenox Development, LLC. It was signed by Philip Reagan on behalf of New Lenox Development, LLC. As we know, none of those payments were made. Did the parties have benefit of counsel when they did this? I don't know that Morris Engineering did, but I know that at least one of the Reagans does have some legal training. I believe attended law school. I don't know if he's ever practiced law, but one of the Reagans does have some legal training and some experience. What was the sum total of the amount that Morris is claiming is owed by, I guess, in this instance, New Lenox? Well, the count one of the second amendment complaint, which did withstand a motion to dismiss, seeks the recovery of $50,000 directly from New Lenox Development. That count is not an issue in this appeal. It's with regards to counts two, three, four, and five. Count two was brought not against New Lenox Development, but rather against the other defendants on an agency theory. It was brought against Hiller Development Corporation, the Piatone Development Corporation, Regan Corp., Philip Reagan, and James Reagan, all referenced in the actual written agreement prepared by one of the Reagans, and were seeking recovery against these defendants as the disclosed principal under the breach of contract theory. New Lenox Development clearly was acting on behalf of itself because it bound itself under that written agreement, but it also was acting as a disclosed agent on behalf of the other entities as its principal, and those entities, again, Hiller Development, Piatone Development, Regan Corporation, Philip Reagan, and James Reagan. That's your legal theory. That is correct, Your Honor. That is our legal theory. So how much money is this whole dispute? $50,000 or greater? Well, the sum total is in the neighborhood of $171,000. Nobody hired a lawyer? I'm sorry, Your Honor? Nobody hired a lawyer? At that point in time, no one did hire a lawyer. That's correct. We were brought into the case to the matter, and we filed a complaint in 2017. The original complaint was challenged with a motion to dismiss. It was a very different complaint. We alleged a breach of contract in counts one and two, first for the $50,000 and then second for the sum total of the $171,000, at which time the circuit court granted the motion to strike and afforded us the opportunity to amend. We did. We filed the first amended complaint and then a second amended complaint. The second amended complaint is substantially different than the original complaint. The hearings that are at issue here, the dismissal orders, were the very first time that the trial court heard any argument on the motions to dismiss with regard to the second amended complaint. I think that's very, very important. It is our theory that the written agreement, which was prepared by the Reagans and New Lenox Development, without any objection, did include all of these entities, the Reagan Corporation, the individual Reagans, as well as Hiller Development and Piatone Development, because it was clear that the intention was to reach a compromise between all of these entities, all of these individuals, and Morris Engineering for a reduced amount at a set schedule, September 1st in 2013 and September 1st in 2015. And as we know from the facts, that did not happen. Your client was able to presumably enter into agreement with all of these entities in separate agreement, right? It presumably could have entered into separate agreements, but as we have alleged in the second amended complaint, it was working through and with regard to any of the entities, Phillip and James Reagan. They were the people that they dealt with. There's no allegations that at any point in time, anyone from Morris Engineering, with regard to these business arrangements, dealt with anyone other than Phillip and James Reagan. They were the controlling parties. They controlled each of the entities. They negotiated on behalf of the entities. They were the ones who were hiring Morris Engineering for the work. So, as we allege, with regard to the agent... And just as a background, because you're inundating us with facts, which is fine, but Morris Engineering could have entered into a contract with each and every one of these entities at the time of rendering services, right? Yes, Your Honor. That's true. Instead, they did not. They did not. They did not. They relied upon the representations and the relationship they had with the two Reagan individuals. They continued to perform work. The Reagan individuals, as well as the entities, benefited as a result of that work, which led to, in 2013, the entry into, finally, the written agreement. And we do allege, in count two, that there is a theory of agency under which Morris Engineering should be entitled to recover against not only the individual Reagans, but the other entities named in the agreement, because there clearly was, we've alleged, a principal-agent relationship between the parties. It's clear that the Reagans were controlling all of the entities, including New Lenox Development, and that the conduct of all of the entities was being directed by and within the scope of that agency relationship. The Reagans were using these various entities for their benefit in order to ensure that the work that was requested to be done at the properties that they owned and controlled was done. And as we set forth in the briefs, it is clear that, with regard to agency, the hallmark is the right to control by the principal, the right to control the agent. And clearly, we have established factually that these agents were being controlled by the principals. And in this case, the heart of the principals were Philip and James Reagan. They have total control. They exercise total control over all of the entities with regard to the relationship with Morris Engineering. And we further set forth that when an agent discloses, in this case, with regard to the contract, the agent would have been New Lenox Development. When the agent discloses the identity of the principals, and they're all set forth on the written document prepared by the Reagans, the agent is not responsible under the contract unless it expressly agrees to do so. Clearly, in this case, New Lenox Development, the agent expressly agreed to bind itself. So not only is New Lenox Development responsible for the breach of the contract, but it's our contention that all of the other parties are equally responsible and liable for the breach of the contract because they were disclosed principals of the agent. And the agent's failure to have fulfilled its contractual obligations leads to liability on their part. Does that mean your time is up? Oh, I apologize, Your Honor. Mr. Trout. Good afternoon, Your Honors. May it please the court. My name is David Trout, T-R-O-U-T of Trout Downing, LLC. And I represent the following parties in this appeal. New Lenox Development, LLC, Regan Corporation, Pillar Development Corporation, Piatone Development Corp., James R. Regan, sorry, Philip R. Regan, and James M. Regan. As counsel referenced, the standard of review on this appeal is de novo. And our position is that the trial court properly dismiss count two with prejudice, count three with prejudice, count four with prejudice, and count five with prejudice, except for paragraphs 48 through 50, which were resolved in, which were disputed in the motion to reinstate. A summary of the pertinent facts that I want, pertinent allegations that I want to raise at issue here. Our first is Morris contracted with Pillar Development to perform professional services in 2002. And it alleges that as of December 20th, 2007, that Pillar owed it the amount of $1,951.25. Morris contracted with Piatone to perform professional services in $1,951.25. Morris thirdly contracted with New Lenox Development to perform professional services in 2005. And as of December 20th, 2007, Morris alleged New Lenox Development owed it $135,850.70. These are all, just as a form of background, these are all separate entities that have a separate development in a physical location. Also, there's allegations in the complaint that Regan Corp did not enter into a contract with Morris. Philip Regan did not enter into a contract with Morris. James Regan did not enter a contract with Morris. And neither Regan Corp, nor Philip Regan, nor James Regan owed any money to Morris under any theory of any contract or any invoice. And counsel talks about how in March of 2013, after a tortured history, that they said that they made a party, all the people, a party. They made New Lenox a party. They made Regan Corp a party. They made Pillar Development a party. They made Piatone Development. And the Regans individually parties to this contract. That contract is attached to the complaint as Exhibit A. And looking at that contract, there is no, there's no evidence that any of those parties are, that those entities or individuals are a party because the only party is New Lenox Development. There's a signature line for one party. They were the party that was contractually bound. And counsel in their pleadings admit that Phil Regan, who allegedly prepared this document, was the only one who signed in his corporate capacity and never agreed to be personally liable to this, in this, to this contract. Count two is the complaint, is the account for vicarious liability. That was dismissed under 2615. The sole contracting party was New Lenox Development. And sentence two of the contract says that it will receive money. Specifically, it says Morris Engineering will receive $25,000 on or about September 1st, 2013, and another $25,000 on or about, on or before September 1st, 2015 from New Lenox Development. It's the only party that is receiving money from, and New Lenox Development is the only party to the contract. So count two is for vicarious liability. Well, unfortunately for, for the plain, a vicarious liability is not applicable to contract law. This is a tort, doctrine of tort law, where a principal can be held liable for the negligent contact of an agent within the scope of agency, but has no application to contract law. And we pointed that out in our pleadings. The case cited by plaintiff, sorry, Morris Engineering is Manginini versus Contegra Health. That was about a doctor and a hospital and whether the hospital was an agent of the doctors. There's no bearing on this contract law, the contract law, or this case. They raise an argument about agency. However, Morris fails to ledge any facts that established New Lenox Development entered into the contract as the agent of Phil Regan or the three independent entities. They make some comments that, that, that the, the allegations that the Regan did this was, was for their, all the work that was done was for their benefit. The benefit was the under, under Morris's theory, any individual that called up somebody on behalf of an entity and requested services that it would be done for their individual benefit. It's completely flies in the face of all corporate and LLC liability shielding laws under the statute or under common law. Plaintiff or Morris Engineering also fails to allege that North New Lenox Development had the power to affect their legal relations. They only make a general conclusory allegation that New Lenox was the agent because the Regan's purported to owner control entities and requested the work performed on the project. And what's interesting about their pleadings is they allege that the Regan's were owners and managers and principals. And then somehow the agency gets flipped where New Lenox Development is now the agent on behalf of the Regan's. There's, it's a complete flip of what any allegation they had in the complaint. And there's nothing that supports that New Lenox Development was an agent on behalf of any of the individuals and the entities. And I want to point out too, that under the con at the time that the of the Regan's was zero, Hillard, sorry, Regan Corporation was zero. For Hillard Development, it was $1,951. And for Piatone, it was only $3,268. But yet those five, those two entities, sorry, three entities and two individuals with no liability before are all of a sudden going to be now liable individually and jointly and severally for $50,000. It belies any common sense and it's not consistent within the pleadings or any case law. And that being said, why would the agreement that was drafted by one of your clients indicate that, you know, it lists all of the names of these entities, including ones that you say at that stage of the game owed nothing? Um, I think that they were put in probably as a courtesy because no, and it says, it says if any amounts owed, and I think it was probably done as a courtesy to Morris Engineering. What courtesy would that be to give them some false sense that their debt would be paid? Well, I don't think there was any false sense of security that they were trying to give them. I think knowing that the party that was signing the contract, that there was no, there was no liability for those entities or individuals, and the party signed the contract was New Lenox Development, that there was that, that the party signing it would be the one that would be responsible and liable under the contract. Again, I don't think that answers my question. Since they were the drafters, it would be different. I think if Morris Engineering drafted the agreement, and, you know, your client could only sign and obligate him as far as what his legal obligation would be for whatever entity represented, but when he drafts it, and he includes all of them. Well, let me, let me back up. That was, that is alleged by the plaintiff and the motion to dismiss. I don't, I'm not, I'm not convinced that it was actually drafted by my client, that was alleged by the plaintiff, and that was not addressed in the motion to dismiss, but because it didn't comply or come under a 615 motion. But the plea, because we take the pleadings as pled, so I can't say that my client actually even drafted this agreement. But at this stage, we have to take the pleadings as they are, right? Correct. And that's part of, yes. So as far as why... Sure then to, I mean, at this stage, we have to accept that your client did draft them. So perhaps it's, the dismissal at this stage would be premature. No, I think the dismissal is not premature because I think under any theory that they give for the agency, that there's no liability for individuals that were not, did not sign the agreement and... Well, wouldn't you have to, wouldn't you have to avert, we're a fact pleading state in Illinois. Wouldn't you have to avert facts to support your legal theory and your pleadings? Pardon me? You agree we're a fact pleading state in Illinois? Correct. Okay. So anybody who pleads needs to avert facts sufficient to undergird their legal theory. And if this, in this situation, it's agency, right? That's what they're alleging. Correct. Okay. And so were those in the pleadings? There's, there's some conclusory statements about the Regans and their position with these entities. The only allegation regarding conclusory is regarding the agency. Pardon me if I, if I pull it up your honor. Where it's agency for new Lennox development as to the other entities and the Regans is paragraph 29 of the complaint that's on C 127 paragraph 29. And it says it's a conclusory statement. And it says new Lennox development was acting on behalf of itself and as the disclosed agent for the principles. And then it lists the entities and the individuals when it entered into the contract. That's the only fact that alleges some sort of agency between new Lennox development and these entities that allegedly signed a contract for. It's a one sentence. It's in this conclusory. So conclusory statements can't be well supported and, and, and, and in motion to dismiss they're, they're not considered. The contract is signed only by new Lennox, correct? Correct. Okay. And then in this statements that are being made in this contract were, were what the, about the other entities, the purpose of the contract. I think the purpose of the contract was that, that soups to nuts. If there's anything that anybody owes, if anything, but nobody owed anything. So Regan's didn't know anything. They had no liability. The Regan corporation had no liability. They admitted in their 2007, in 2007, that at that time, which was the last time we have that the only parties that had any liability were new Lennox development at roughly 135,000 and then Hiller at 15, 1900. And then Piatone at 3,200. So at best one could say that new Lennox is basically assuming the accounts payable of those other entities. At best case scenario. But once again, this is a compromise. So really the only compromise was new Lennox development's own invoice, which at the time was roughly 135 down to 50,000 to now throw everybody else in who had no, no life. Yeah. It was two 25,000 on two payments, right? Correct. Correct. Okay. Let me ask you just in theory, can a party be an agent for a specific incident without being an agent for all purposes? I think possibly it could, but I think in a corporate or an LLC establishment, I don't think that's applicable unless there's the proper pleadings for it. And I think we've got the light, the, the case law that they cite, it was a, or an attorney had a fiduciary duty and was agent for an individual. And I, I think in some cases it could, but I don't think plaintiff has pled that in this case. Well, in this document, this contract, you have new Lennox being given the authority to pay the debts. First of all, to assess the debts because it says any and all. So they're given the authority to assess what, where the debts are owed and where there are any to pay those debts. Why is that not an agency? Because they haven't established that we are an agent for that entity. They were, they were the primary liability responsible party. They were the first listed and they were the one that signed it on and I don't think there's anything that shows that there's that they are now acting on behalf of two individuals and, and three other entities in any way in this agreement. And I think it's clear and ambiguous, sorry, it's unambiguous that the contract binds new Lennox development for the amount. And they're, they're the only party to the contract. Well, I agree they're the only party to the contract, but again, in, in theory, what this is saying is we are that new Lennox has the authority from these other parties, these other people, these other entities to determine which of them owes money to Morris and to pay that money on their behalf. Is that not what this contract is providing? I think my read on it is that the contract deserves, it's agreeing to pay any amounts owed. And, and if the, if the Regans owed no money, then they owed no money. And my guess is that somebody probably didn't, you know, look to see what the amounts are, but the pleading showed that they owed no money. So I think it, it creates an, an absurd result that individuals that didn't know any money are now going to be individually responsible for a debt that was signed on behalf of a company that had the obligation. Okay. All right. Are there any other questions for Mr. Trout? No, no. Mr. Bozetny, any rebuttal? Your mic is off, Mr. Bozetny. I apologize, your honor. Uh, yes, I, I think the court is absolutely correct. The, the contract, which was drafted by the Regans includes all of these other entities, including Regan corporation and the two individuals, Phillip and James Regan. If in fact there were amounts that were not owed or they didn't wish to be part of this contract, they could have simply not been included. They were the drafting parties. Um, the fact that they were included suggests, and the language of the contract suggests that this was a compromise to pay Morris an amount on behalf of all of these entities. And, and the court is also correct that new Lennox development is the party to the contract, but with regards to count two of the complaint, it was the evidence they drafted the contract opposing counsel says that's not fair. It's an allegation in the second amendment complaint, your honor. And for purposes of the two, six 15 motion to dismiss, it's a well-placed fact that has to be accepted as true at this point in time. I also want to point out counsel's correct. There is an allegation in paragraph 29 with regard to agency paragraph 29 of count two, but count two repeats and restates and realleges incorporates all of the preceding 28 paragraphs of the second amended complaint. And in all of those paragraphs, it is detailed the relationship and control and actions taken by the Regan's on behalf of development, the Regan's on behalf of development, the actions taken by themselves on behalf of new Lennox development, all with regards to Morris engineering. It's also alleged that at one point in time, it is, it was suggested by the Regan's it's alleged in the second amendment complaint that amounts that Morris engineering hadn't been paid by Hiller development could be recouped by work that was going to be performed by, or on behalf of Piappone development. So the facts in the second amendment complaint clearly allege a interrelationship between all of these entities and the Regan's. And we do state in the second amendment complaint that the Regan corporation, we didn't perform any work on behalf of the Regan corporation directly that we're aware of. We did not perform any work directly for Philip or Regan or James Regan that we're aware of, but we requested that because of this history of representations and non-payment that they be included in this agreement so that they could potentially also be liable and responsible for this amount. That was the purpose. The purpose was to ensure that it wasn't just going to be new Lennox development. It was going to be this larger group of individuals and entities that would be responsible and liable for this $50,000 debt. And of course, as we know from the facts, new Lennox development simply didn't pay it. That's the subject of count one of the complaints. You're trying to make them, you're saying now, guarantors of the obligation of new Lennox. In a sense, yes, your honor. Yes, we are. We're simply looking to make sure that we have other entities, other individuals from which we can collect that $50,000 as a result of the breach of contract by new Lennox development. You have no guarantor agreement. There is no guarantor agreement. The only contract, the only written agreement, the only agreement at all in writing is what is included, which I read to the And counsel is correct. I mean, even if Philip Regan and James Regan and Regan Corporation didn't have an obligation, they could have become guarantors, taken on that responsibility, taken on that liability. And we contend that based upon this contract, they did accept that responsibility and liability. And when new Lennox development failed to pay, they, each of them, each of these entities, each of these individuals became responsible for that $50,000 debt. And lastly, again, I just want to remind the court, this was, this motion was heard by the court. And the trial court dismissed count two with prejudice under section 2615. On the very first opportunity, the very first chance it heard any arguments, there was no opportunity for leave to as were counts three, four, and five with regard to the statute of limitations. And unfortunately, I see that my time is now over and I wasn't able to fully cover those, but I think that the brief set forth our arguments with regard to those claims as well. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll now stand in brief recess until three o'clock.